## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Gabriela Rojas-Lozano,<br>Individually And On Behalf Of All Other<br>Persons Similarly Situated,<br><br>*Plaintiff*,<br><br>v.<br><br>Google Inc.,<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. A. No. 3:15-cv-10160-MGM |

### DEFENDANT GOOGLE INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER

## I.    INTRODUCTION

This case, both figuratively and literally, has no business in this District.  Plaintiff

Gabriela Rojas-Lozano attempts to state two Massachusetts state law claims against Google, a

Delaware corporation headquartered in California.  She seeks to be the sole Plaintiff representing

both a class of Massachusetts residents and a nationwide class.

Ms. Rojas-Lozano's claim is based on a single act:  her August 2014 opening of an

account on Google's free Gmail service.  The Gmail signup process, she alleges, required her to

complete a "reCAPTCHA," a process whereby the user must type a few letters correctly

transcribing a distorted image of a word or letter.  But that signup process, as shown here, *also*

requires the user to affirmatively agree to a contract with Google—Google's Terms of Service—

by checking a box next to the text "I agree to the Google Terms of Service and Privacy Policy"

before one is allowed to create a Gmail account.  Declaration of Wei Liu ("Liu Decl.") ¶ 6 &

Ex. A.

The version of the Terms of Service in force when Ms. Rojas-Lozano signed up for Gmail (which remains unchanged today) contains the following choice of law and venue provisions:

> The laws of California, U.S.A., excluding California's conflict of laws rules, will apply to any disputes arising out of or relating to these terms or the Services. All claims arising out of or relating to these terms or the Services will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts.

*Id.*, Ex. B at 4.  These unified Google Terms of Service apply to most of Google's scores of services, including both Gmail and reCAPTCHA.[1]  Indeed, links to the same terms of service and privacy policy are contained in the reCAPTCHA windows displayed to users as well, as shown at Paragraph 26 of the Complaint.

---

[1] The Terms of Service define "Services" as Google's "products and services."  *Id.*, Ex. B at 1.

As a result, Ms. Rojas-Lozano is contractually bound to venue and choice of law provisions, and has brought her claims under the wrong laws and in the wrong court. Neither of her causes of action state a claim under California law: California has its own, quite different consumer-protection statutes, and in California, there is no cause of action for "unjust enrichment," which instead is merely a remedy for quasi-contractual or *quantum meruit* claims that are in turn barred by the existence of an actual contract. Thus, her claims are subject to dismissal under Rule 12(b)(6) for failure to state a claim.

In the alternative, this case should be transferred to the Northern District of California's San Jose division pursuant to 28 U.S.C. § 1404. There are multiple bases for that transfer, each of which alone would be sufficient. *First*, the Plaintiff contractually agreed to exclusive venue in California; that agreement nullifies any deference to the Plaintiff's choice of forum (as well as any other "private" transfer factors) and mandates transfer in all but the most exceptional circumstances. *Second*, this is a putative nationwide class action, and for that reason as well there is no deference to the plaintiff's chosen forum. And *third*, all of the customary § 1404 public interest factors strongly favor transfer. As set forth below and in the accompanying declaration of Wei Liu, virtually all of Google's reCAPTCHA operations and facilities, and thus all of the relevant witnesses, development documents, development records, and financial records are located in Mountain View, California.

And finally, even if private factors such as location of witnesses and evidence were relevant here—and they are not—they also strongly favor transfer. All of Google's reCAPTCHA facilities, operations, and records are located in Mountain View, California, as are fifteen of the eighteen people who work on reCAPTCHA. The remaining three are located in Seattle, Boulder, and New York City.

By contrast, Google has no reCAPTCHA personnel, records, facilities, documents, witnesses, or other reCAPTCHA-related evidence in this District.  Neither does Massachusetts have any particular public interest or expertise in enforcing California law against a California defendant on behalf of a putative nationwide class.

Accordingly, this Court should dismiss this action for failure to state a claim, or in the alternative transfer this action to the Northern District of California.

## II.    ARGUMENT

### A.    The Parties' California Choice of Law Bars Plaintiff's Claims

#### 1.    The First Cause of Action is Brought Under Massachusetts, Not California Law

As set forth above, there is a contract between Ms. Rojas-Lozano and Google, which establishes the law of California as the exclusive law governing their relationship.[2]  The precise choice of law and venue-selection provisions at issue here—Google's standard provisions—have repeatedly been upheld and enforced by multiple courts throughout the country.  *See*, *e.g.*, *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472 (2d Cir. 2011); *Digital Envoy, Inc. v. Google, Inc.*, 319 F. Supp. 2d. 1377 (N.D. Ga. 2004); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229 (E.D. Pa. 2007); *Person v. Google, Inc.*, 456 F. Supp. 2d 488 (S.D.N.Y. 2006); *Rudgayzer v. Google, Inc.*, 986 F. Supp. 2d 151 (E.D.N.Y. 2013).  As the *Feldman* court observed, Google has a legitimate and "special interest in limiting fora, because . . . its internet users are located across the United States and the world." *Feldman*, 513 F. Supp. 2d at 242.  This is particularly true

---

[2] The Google Terms of Service, in addition to being admissible in (and dispositive of) a Section 1404(a) motion, are subject to judicial notice in support of a motion to dismiss, under both Ninth and First Circuit law, pursuant to the incorporation by reference doctrine. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1199 (9th Cir. 2010); *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993) (documents sufficiently central to the claim and not subject to dispute are admissible on 12(b)(6) motion).

where—as here—the Plaintiff has reached out to a California company in order to sign up for a free service provided by that company.

But Ms. Rojas-Lozano, notwithstanding her contractual commitment, has eschewed California law, and has instead attempted to state a claim under Massachusetts General Law Chapter 93A.  By the plain terms of the parties' choice-of-law agreement, that claim is barred, and must be dismissed.  *See, e.g.*, *ePresence, Inc. v. Evolve Software, Inc.*, 190 F. Supp. 2d 159, 162, 164–65 (D. Mass. 2002) (granting motion to dismiss Chapter 93A claim based on a choice-of-law provision specifying that California law applies).

**2.     Unjust Enrichment is not a Cause of Action Under California Law**

Plaintiff's claim for unjust enrichment also must be dismissed, because it is not a cause of action under California law. *See, e.g.*, *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *15 (N.D. Cal. Sept. 20, 2011) ("[T]here is no cause of action for unjust enrichment under California law."); *see also Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (Cal. Ct. App. 2011) ("Unjust enrichment is not a cause of action"); *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (Cal. Ct. App. 2006) ("There is no cause of action for unjust enrichment.").

Unjust enrichment is, at best, a remedy: a theory of recovery based on quasi-contract. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (Cal. Ct. App. 2010).  It is unavailable where a "valid and enforceable written contract governing [the] subject matter" of the dispute exists—such as Google's Terms of Service.  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).

Because under California law no such cause of action exists, it must be dismissed.

5

### B.       In the Alternative, This Case Should be Transferred to California

In the alternative, this case should be transferred to California pursuant to 28 U.S.C.

§ 1404(a). The analysis begins—and should end—with the parties' contractual forum selection

clause.[3]

Under Ninth Circuit law, forum selection clauses are "presumed valid and should not be

set aside unless the party challenging enforcement of such a provision can show it is

'unreasonable' under the circumstances." *Arguetta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325

(9th Cir. 1996) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907

(1972)); *see also Sharani v. Salviati & Santori, Inc.*, 2008 WL 5411501 (N.D. Cal. Dec. 29,

2008).

The burden to show unreasonableness is on the party challenging the forum selection

agreement, and mere imbalance in bargaining power is insufficient to do so. *Murphy v.*

*Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2003) ("a differential in power or education

on a non-negotiated contract will not vitiate a forum selection clause") (citing *Carnival Cruise*

*Lines, Inc. v. Shute*, 499 U.S. 585, 594–95 (1991) (upholding "non-negotiated forum-selection

clause" that appeared in "form ticket contract")); *see also Fireman's Fund Ins. Co. v. M.V. DSR*

*Atl.*, 131 F.3d 1336, 1338–39 (9th Cir. 1997) (rejecting argument that forum selection clause

should be invalidated because the bill of lading in which it appeared was a contract of adhesion).

The result under First Circuit precedent is the same. *See Lambert v. Kysar*, 983 F.2d

1110, 1117 (1st Cir. 1993) (following Federal law presumptively upholding forum selection

---

[3] Until recently, there was considerable confusion among federal courts as to whether the proper means of enforcing a forum selection clause was dismissal under Rule 12(b), transfer under Section 1404(a), or transfer under Section 1406(a). The Supreme Court resolved that question in *Atlantic Marine Construction Co. v. U.S. District Court*, 134 S. Ct. 568, 579–80 (2013), holding that Section 1404(a) is the appropriate vehicle.

clauses, and noting that—as here—a choice of law provision in any event required application of the transferee venue's law); *Cross Roads R.V. Center, Inc. v. Textron Fin. Corp.*, 609 F. Supp. 2d 151, 153 (D. Mass. 2009) ("A forum selection clause will be enforced unless doing so would be 'unreasonable' under the circumstances.").

The Supreme Court has recently confirmed that a valid forum-selection clause trumps the plaintiff's choice of forum, and indeed *all* private interest considerations, in Section 1404(a) analysis:

> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum. The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "**a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.**"

*Atlantic Marine*, 134 S. Ct. at 581 (internal citations and quotations marks omitted) (emphases added).

As a result, a valid forum-selection clause completely trumps the plaintiff's choice of forum:

> [T]he plaintiff's choice of forum merits no weight. . . . Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the "plaintiff's venue privilege." But **when a plaintiff agrees by contract to bring suit only in a specified forum**—presumably in exchange for other binding promises by the defendant—**the plaintiff has effectively exercised its "venue privilege" before a dispute arises**. Only that initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.

*Id.* at 581–82 (emphases added).  Moreover, a forum-selection clause trumps not only the

plaintiff's choice of forum, but all other private interests typically considered in Section 1404(a)

analysis:

> [A] court evaluating a defendant's § 1404(a) motion to transfer
> based on a forum-selection clause should not consider arguments
> about the parties' private interests.  When parties agree to a forum-
> selection clause, they waive the right to challenge the preselected
> forum as inconvenient or less convenient for themselves or their
> witnesses, or for their pursuit of the litigation.  A court accordingly
> must deem the private-interest factors to weigh entirely in favor of
> the preselected forum. . . . Whatever inconvenience the parties
> would suffer by being forced to litigate in the contractual forum as
> they agreed to do was clearly foreseeable at the time of
> contracting.

*Id.* at 582 (internal citations and quotation marks omitted) (alterations in original omitted).

In short, the Supreme Court has stated, in unequivocal terms, that only the most extreme

countervailing public interest factors will be permitted to overrule a contractual choice of forum:

> [A] district court may consider arguments about public-interest
> factors only.  Because those factors will rarely defeat a transfer
> motion, the practical result is that **forum-selection clauses should
> control except in unusual cases.  Although it is conceivable in a
> particular case that the district court would refuse to transfer a
> case notwithstanding the counterweight of a forum-selection
> clause, such cases will not be common.**

*Id.* (internal citations and quotation marks omitted).

This is not such a case.  Only Section 1404(a)'s public interest factors have any relevance

here: "the law to be applied . . . the connection between the forum and the issues . . . [and] the

state or public interests at stake . . . ." *World Energy Alts., LLC v. Settlemyre Indus., Inc.*, 671 F.

Supp. 2d 215, 218 (D. Mass. 2009).  None of these favor Plaintiff at all, much less rise to the

exceptional or uncommon level needed to ignore a valid forum-selection clause. Massachusetts

has no special interest in enforcing California law, while California's courts clearly do.  Neither

is a Massachusetts court more likely to have experience with California consumer law.

California, meanwhile, has more interest in the conduct of a California-headquartered corporation than does Massachusetts. And of course, in a nationwide class action, every state's interest in putative class members from that state is presumably equal.[4]

Finally, even were Section 1404's private interest factors relevant here—and under *Atlantic Marine* they are not—the location of evidence and witnesses tilts entirely to California.[5] As set forth in the accompanying declaration of Wei Liu, all of Google's reCAPTCHA operations, and thus virtually all of the potential witnesses on both technical and business issues, are in Mountain View, California (as are all relevant documents). Similarly, fifteen of Google's eighteen reCAPTCHA personnel are in Mountain View, and the remaining three (located in Seattle, Boulder, and New York) are not in this District. In contrast, we are aware of no witnesses other than the Plaintiff, no relevant documents, and no other evidence that can be found in this District.

## III. CONCLUSION

This is not a close case. Under the parties' contract, any dispute must be brought under California law in a California court. Plaintiff has done neither. Accordingly, this Court should dismiss this case outright, or in the alternative order it transferred to the Northern District of California.

---

[4] Note that, even were private interests relevant here—and they are not—a plaintiff's choice of venue in a national class or representative action "is entitled to only minimal consideration." *Lou v. Belzburg*, 834 F.2d 730, 739 (9th Cir. 1987); *Purcell v. Spokeo, Inc.*, No. C10-03978, 2011 WL 2607163, at *2 (N.D. Cal. July 1, 2011) (same).

[5] Absent a forum-selection clause, "[t]he most important factor in deciding whether to transfer an action is the convenience of witnesses." *Demers, Jr. v. Pilkington North Am., Inc.*, No. 10-cv-296, 2010 WL 4683780, at *6 (D.N.H. Nov. 10, 2010); *Gemini Investors Inc. v. Ameripark, Inc.*, 542 F. Supp. 2d 119, 126 (D. Mass. 2008) (same).

Dated:  March 20, 2015

Daniel G. Booth (BBO# 672090)
dbooth@boothsweet.com
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Telephone: (617) 250-8602
Facsimile: (617) 250-8883

Respectfully submitted,

By: ___*/s/ Michael H. Page*___
Ragesh K. Tangri (admitted *pro hac vice*)
rtangri@durietangri.com
Michael H. Page (admitted *pro hac vice*)
mpage@durietangri.com
Joseph C. Gratz (admitted *pro hac vice*)
jgratz@durietangri.com
Adam R. Brausa (admitted *pro hac vice*)
abrausa@durietangri.com
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:  (415) 362-6666
Facsimile:  (415) 236-6300

Counsel for Defendant
GOOGLE INC.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 20, 2015, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to any identified non-registered participants for whom a mailing address is provided.

*/s/ Michael H. Page*
Michael H. Page
